Day, C. J.
It is claimed that the court of common pleas erred: 1. In sustaining the demurrer to the original petition; 2. In granting the motion of the defendant to strike out of the amended petition irrelevant matter; 3. In sustaining the demurrer to the amended .petition.
All the questions that were made by the demurrer to the original petition are raised upon the demurrer to the amended petition, and it will not therefore be necessary to give a separate consideration to the ruling of the court upon the demurrer interposed to the original petition.
The original petition is manifestly based upon the bond alone. It is equally evident that by the amended petition a recovery on the bond is sought, without any indication of a purpose to add another cause of action by having it “ separately stated and numbered,” ns required by section 86 of the code.
*63 The amended petition differed from the original, chiefly, in stating-fully all the circumstances that gave rise to the bond, or that which-constituted the consideration therefor.
In determining whether the court erred in sustaining the demurrer to the amended petition, the first question presented for our determination is, whether the plaintiff was entitled to recover on. the bond, which was the real ground of the action.
It is apparent upon the face of the bond, as well as from the allegations in the petition by way of inducement to the bond, that it. <83] was not given for the repayment of a sum of *money obtained' of the commissioners. It does not purport to be given for that purpose, nor did the defendant in fact even receive any money of them. The orders amounted-to $15,000; and the sum named in the first bond, as well as in the bond in suit executed in lieu of that, was-$20,000. Moreover, that amount is called the “penal sum,” to be-paid only on failure of the railroad company to complete its road in a specified time. It is not an obligation for the unconditional payment of any sum of money whatever. It is more in the nature-of a covenant to finish the road, or to secure its completion, than a. promise to pay money. The completion of the railroad is the primary object of the bond; the payment of “ the penal sum ” of money is soeondary. This is evident from the recitals in the “ conditions” of the bond. From them it ajjpears that the orders were issued to-the railroad company, “ to bo used by said railroad company to relieve them of their embarrassment, and to enable them to prosecute-the work upon said road to a speedy completion to its eastern terminus,” and that the orders had been applied to another purpose,, leaving the road “unfinished.” These are the reasons assigned in the bond for the obligation to pay the “penal sum” named therein, on failure of the company to complete the road within the time mentioned. The bond was to be void as an obligation to pay money,, if the purpose for which the orders were issued was accomplished. It thus appears that the bond was taken to secure the completion-of the road (the end for which the orders were isstíed), rather than for the payment of a sum of money.
The orders had been issued to the railroad company, as stated in tha bond, “ to enable them to prosecute the work to a speedy completion.” It is manifest that the bond was taken in furtherance-of the same object that was sought to be attained by the issuing-of the orders to the railroad company. Had the road been finished, *64 the purpose for which the orders were issued at one time, and the-bond taken at another, would have been attained, and the intended mission of both fully accomplished and ended. The obligors in the bond would have been relieved from all liability thereon. Neither “the penal sum of twenty thousand dollars,” nor the amount *of the orders, or any sum paid thereon, could, in [64 that event, be recovered on the bond.
The county orders were made payable in one, two, and three-years respectively after their date. The first became due August 23,1856. It appears, from the bond taken of the defendant on that day, that the commissioners had at that time been informed that the railroad company had not used the orders in constructing-the road, but had suffered them to be applied on a debt of the defendant, which, it is shown by the petition, had been incurred for the benefit of the company.
Instead of refusing to pay the orders, as undoubtedly they might, have done, the commissioners made the orders available to the-company by payment, on receiving the bond of the defendant in-the nature of a guaranty that the road should be built.
It is evident that the whole object and purpose of the commissioners in this entire series of transactions — the issuing the orders, the taking the bond, and the consequent payment of the orders— were, just what is expressed in the bond, to relieve the company of its pecuniary embarrassment, and to enable it to finish the road.
Were these transactions within the legal powers of the board of commissioners ?
In Treadwell v. The Commissioners (11 Ohio St. 190), it was. held that “ a board of commissioners of a county is a quasi corpo-. ration, ‘ a local organization which, for purposes of civil administration, is invested with a few of the functions characteristic of-a. corporate existence. A grant of powers to such a corporation, must be strictly construed.’ ”
The “ act establishing boards of county commissioners, and prescribing their duties,” confers upon them power to perform only “ such duties as now are, or hereafter may be, required of them by law.” S. & C. 243.
We do not find among the powers conferred or duties imposed upon the commissioners, anything that would authorize them to-purchase railroad bonds with the county funds, or to loan the- *65, 66 ■credit or money of the county to aid railroad corporations to build ■their roads, however desirable it may be to do so.
•65] *But the commissioners in undertaking to draw money from the county treasury to pay for railroad bonds, or to enable a railroad company to build its road, without authority conferred upon them so to do, not only transcended their powers, but were acting in violation of the fundamental law of the state. It is a provision of the constitution that “No money shall be drawn from •any county or township treasury, except by authority of law.” Art. 10, sec. 5.
Nor, indeed, could the legislature authorize county commissioners to issue orders, or dispose of county funds as a loan of county credit or money for the purpose stated in the bond. The 6th section of the 8th article of the constitution prohibits it, as follows :
“ Seo. 6. The general assembly shall never authorize any county, ■city, town, or township, by vote of its citizens or otherwise, to become a stockholder in any joint stock company, corporation, or association whatever; or to raise money for, or loan its credit to, or in aid of, any such company, corporation, or association.”
It is true that it is shown by the petition, that for the $15,000 of county orders the commissioners received in return $20,000 in the mortgage bonds of the railroad company.
If it might be claimed that this transaction was not literally within the prohibition of the section of the constitution above •quoted, it can not be denied that it was in contravention of the policy clearly indicated thereby. If the legislature were forbidden to authorize such transactions, the commissioners, who derive their powers from it, were not less so prohibited.
It follows that the county orders mentioned in the bond, issued without legal authority, and in violation of the public policy of the state, were void. They imposed no legal obligation on the county in favor of the company to which they were delivered; nor is anything shown in the petition — if indeed it were legally possible — to render them of any more value in the hands of a third party.
When the first order became due, and after they had learned of the misapplication of the orders, the commissioners, instead of re-66] fusing to pay them, as they ought to have done, *took the bond ■of the defendant to secure the accomplishment of the object for which the illegal orders were issued, and paid them as they became due. The money was paid, as the orders were made, in “aid of” *67 the railroad company. Though the money may not have been paid' upon the faith of the bond of the defendant alone, it was evidently taken, in fact, to enable the company “to raise money” on the illegal orders, or in furtherance of the object for which they were-■made.
The second bond — the one in suit — was substituted for the first,, a short time after that was made, in pursuance of an agreement, between the parties when the first was made.
The bond was not taken for $15,000, the amount of the orders, but for $20,000, the amount of the railroad bonds that had been-received for the orders. It did not purport to secure the return of the money to be advanced, but rather to secure the value of the-railroad bonds by a completion of the road, or, if that failed, an amount of money equal to that of the railroad bonds, and greater than that of the orders.
Moreover, as if this was intended to ratify the original transaction, the commissioners retain the mortgage "bonds that they received for the orders.
The money was paid on the orders after the delivery of the defendant’s bonds: the first order was paid on the day the first bond was given, and the others after the date of the bond in suit. Hence it woitld seem that the bond was taken to keep alive and make-effective the illegal orders, so that they might be available to the-company for the accomplishment of the purposes for which the orders were issued. The bond thus entered into and became a part-of the transactions of the board of commissioners in the unauthorized and illegal disposition of the county credit and county money in aid of the railroad corporation. The whole transaction was clearly against the spirit and policy of the constitution and laws of the state. To sustain transactions like these would nullify the salutary prohibitions of the constitution, and open wide the door to-the very evils thereby sought to bo obviated.
The majority of the court, therefore, hold that the bond, as well as the orders, were illegal and void; and that an action can not be-maintained thereon to recover either the “penal *sum of [67 twenty thousand dollars,” or the amount paid on the illegal orders.
But it is claimed that, although the bond may be void, a case is made in the amended petition, “ to recover at least the amount of the county orders, $15,000, and interest-.”
If this can be done, it must be either upon the ground of the- *68 fraudulent procurement of the orders, or of an implied promise of the defendant to repay their amount to the commissioners.
It was settled in Sturges v. Burton, 8 Ohio St. 215, that the .statutory bar arising from lapse of time, is available on demurrer, when the facts requisite to constitute the bar are shown by the pleading to which the demurrer is interposed.
An action for the recovery of money on the ground of fraud is barred in four years after the discovery of the fraud. The first bond was dated August 23, 1856. It is apparent from the condition, of the bond, as well as from other facts stated in the petition, that the fraud complained of was known by the commissioners at that time. This action was commenced January 2, 1863, more than four years after the discovery of the alleged fraud.
For myself, I do not see how the plaintiffs could, at any time, -maintain an action against the defendant on an implied promise to pay the plaintiffs either the amount of the orders or the money paid thereon. The orders were not issued to the defendant, nor was the money paid to him. Whatever benefit was derived from -either, came to the defendant from the railroad company. The railroad company was the immediate beneficiary of the plaintiffs. 31oreover, the orders and the bond upon which the money was paid were illegal, and the commissioners by this suit still affirm and .stand upon the illegal bond. It is an elementary principle that, “ Where money has been actually paid over, in pursuance of an Illegal contract, it can not be recovered back; for the court will not assist such a transaction in any way.” Broom’s Legal Maxims [645],
If, however, it be conceded that an action could have been maintained, on an implied liability upon the facts alleged in the amended *68] petition; if it arose when the orders were procured, *or when they were applied in payment of the judgment against the defendant — the only time when he derived any benefit from the •transaction — a period of more than six years had elapsed before the commencement of this suit, and the action would be barred by the statute of limitations.
But if an action accrued against the defendant on an implied liability when the money was paid to the railroad company, or to the bank to which they had been negotiated, still there exists, it seems to us, insuperable obstacles to a reversal of the judgment •of the court of common pleas.
*69 The original petition was based upon the bond alone ; and, from, •,a careful perusal of the amended petition, it would seem that no •other ground or cause of action was intended to be inserted in that. There is no attempt to state more than one cause of action by distinct and separate statements. Much of the matter set forth in the amended petition was not necessary to a full statement of that cause of action. Before the demurrer to the amended petition was filed, the defendant availed himself of the provisions of the •code, by filing his motion to strike out of the amended petition certain specified matter claimed by him to be “ irrelevant,” also all .allegations “relating to the supposed representations made by the •defendants to the plaintiffs,” and charges of fraud alleged against them. The motion was broad enough in its terms to embrace sub■stantially all matter that was either irrelevant or redundant to a ■single cause of action based on the bond.
It is difficult to see how the fraudulent, representations alleged to have been made in procuring the county orders, are materially relevant in an action on the bond given after the fraud was discovered, to secure the purpose for which the misapplied orders were made, since the efficacy of the bond in no manner depended upon the alleged representations when the orders were made.
But if the amended petition be construed as having, in addition to an amended cause of action on the bond, another cause of action interlarded with, and masked under that, it can hardly be ■claimed that the court erred in sustaining the defendant’s motion by striking out all the matter that was redundant to the action on the bond.
*When the amended petition was filed, more than six years [69 had elapsed after the orders were fully paid. The ruling of the court, in sustaining the motion, at once expurgated the petition of matter not material to the action on the bond, and was also equivalent to a refusal to so far extend the leave to amend as to permit the plaintiffs to ingraft on to the original cause of action a new and •distinct cause of action that was barred by the statute of limitations.
The discretionary powers conferred upon the court by the code, in relation to the amendment and modification of pleadings, are so ample we can not say that the court erred in sustaining the motion of the defendant to strike from the amended petition the matter specified in the motion.
This motion was made and sustained before the demurrer to the *70 amended petition was filed. The petition then contained no cause-of action but that on the bond alone. There was no ease for a recovery on an implied liability for money paid, or for money had and received.
For the reasons already stated, a majority of the court hold that, the court below did not err in sustaining the demurrer to the-amended petition; and for the same reasons there was no error in-the ruling, on the demurrer to the original petition.
It follows that the judgment of the court of common pleas must be affirmed.
Brinkerhoff, Scott, and White, JJ., concurred.